KENJI M. PRICE #10523
United States Attorney
District of Hawaii

SARA D, AYABE 9546
Assistant U.S. Attorneys
Room 6-100, Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: sara.ayabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 28 2019

at 2 o'clock and 00 min. P M cB
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | MAG. NO. 19-~~00209~~ 00201 cB RLP |
| ) | |
| Plaintiff, ) | CRIMINAL COMPLAINT |
| ) | |
| vs. ) | |
| ) | |
| KYONG CHOL KIM, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state the following is true

and correct to the best of my knowledge and belief.

## COUNT 1

### INTERFERENCE WITH FLIGHT CREW MEMBERS AND ATTENDANTS
(49 U.S.C. § 46504)

On or about February 27, 2019, on an aircraft in the special aircraft jurisdiction of the United States, namely Hawaiian Airlines, Flight No. 459, from Honolulu International Airport (HNL) to Incheon International Airport (ICN), in flight, and within the jurisdiction of the District of Hawaii, KYONG CHOL KIM, the defendant, as a passenger on such aircraft, did unlawfully and knowingly, by assaulting and intimidating flight crew members and flight attendants, interfere with the performance of the official duties of the flight crew members and flight attendants and lessen the ability of the flight crew members and flight attendants to perform those official duties, and attempted to do any such act, on Hawaiian Airlines, Flight No. 459, flying from Honolulu International Airport (HNL) to Incheon, South Korea, and diverted to Honolulu, Hawaii.

All in violation of Title 49, United States Code, Section 46504.

//
//
//
//

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this Complaint is based upon the facts set forth in the attached "Special Agent's Affidavit in Support of Criminal Complaint," which is incorporated herein by reference.

DATED: Honolulu, Hawaii, February 28, 2019.

_____
DANIELLE DESANCTIS
SPECIAL AGENT, FBI

Sworn to and subscribed in my presence
This 28th day of February, 2019.

_____
HON. RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | MAG. NO. 19-00209 RLP |
| ) | |
| Plaintiff, ) | SPECIAL AGENT'S AFFIDAVIT IN |
| ) | SUPPORT OF CRIMINAL |
| vs.  ) | COMPLAINT |
| ) | |
| KYONG CHOL KIM, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SPECIAL AGENT'S AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

DANIELLE DESANCTIS, after being first duly sworn on oath, deposes and says:

## BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since July 2014. I am currently assigned to the Violent Crime Task Force of the FBI Honolulu Field Office where my duties include, but are not limited to, investigating criminal street gangs and crimes of violence, including bank robberies. I am further deputized as a Special Deputy U.S. Marshal and have been assigned to the District of Hawaii Marshal Fugitive Task Force since January 2018, where my duties include but are not limited to, fugitive apprehensions. Prior

to joining the FBI, I served as a Norfolk Police Officer for four years and a Detective for two years. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and empowered by law to conduct investigations of an to make arrests for offenses enumerated in Sections 2516 of Title 18, United States Code. Through my training and experience, I have become familiar with the manner in which criminal offenders operate, and the efforts of those involved in such activities.

2. I am familiar with the facts set forth in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses. This affidavit contains information necessary to support probable cause for the criminal complaint against KYONG CHOL KIM, who was arrested without a warrant on Wednesday, February 27, 2019. It is not intended to include each and every fact and matter observed or known to the government.

## **PROBABLE CAUSE**

3. On February 27, 2019, at approximately 1728 hours, Hawaiian-Aleutian time (HAT), this affiant was notified that Hawaiian Airlines flight #HA459, en route from the Daniel K. Inouye International Airport (HNL) to Incheon International Airport (ICN), was diverted back to HNL, due to a disruptive and unruly passenger. The cockpit was secured and the unruly passenger was restrained after being deemed a danger to himself and others.

4. Between the hours of 2015 and 2030 hours, your affiant and FBI SA Jimmy Chen, arrived at HNL to gather preliminary statements from passengers and crew members.

5. Your affiant made contact with the State of Hawaii Department of Public Safety – Sheriff's Division Sergeant Malani, who identified the disruptive passenger as Kyoun Chol KIM (hereinafter "KIM"). Sergeant Malani stated the passenger had been detained inflight with the utilization of zip ties, which were still in place when Sheriffs escorted KIM off the flight.

6. On 02/25/19, KIM, arrived at HNL and was refused entry by U.S. Customs and Border Patrol (CBP) for having improper documentation. KIM was held at the Honolulu Federal Detention Center (FDC), until the next available flight back to ICN, scheduled for 02/27/19.

7. On 02/27/19, CBP agents transported KIM from FDC to HNL. Once at HNL, CBP stayed with KIM until the plane's door was closed. KIM was a pre-board and seated in 35C.

8. Passenger J.H.J., seated in 37A, stated he observed a duty-free worker board the plane and hand KIM what appeared to be a package from the duty-free store. J.H.J. saw KIM remoe a bottle of Ballentine whisky.

9. Passenger L.Y.A., seated in 35A, also observed a duty-free worker deliver a package to KIM.

3

10. HA459 departed HNL for ICN at approximately 1317 hours (HAT). An on-duty flight attendant, R.A., stated that just after take-off, the plane experienced a severe bout of turbulence, forcing the flight attendants to remain seated, postponing all cabin services. The flight attendants were allowed to begin regular service approximately 45-50 minutes into the flight.

11. From take-off until the first service, L.Y.A. observed KIM drink from his bottle of Ballentine Whiskey, stating KIM had finished the bottle by the time the flight attendants began first services. L.Y.A. also observed KIM bothering a nine-year old boy, J.J., who was seated next to him (KIM), by touching the boy and talking to him. L.Y.A. overheard the child's mother, N.J., asking KIM to stop bothering her son.

12. On-duty flight attendant L.Y.A. observed KIM ignore N.J.'s request; and as soon as it was safe to do so, L.Y.A. alerted a flight attendant as to what was happening.

13. J.J. stated KIM was talking to him about how short life is and we are not promised tomorrow. KIM kept touching J.J. on the shoulder and make him feel uncomfortable. J.J. tried to pretend he was sleeping and KIM would shake his shoulders to "wake him up." J.J. told KIM he was scaring him and asked him to stop talking and touching him. KIM ignored him.

4

14. On-duty flight attendant Y.B. approached row 35 from the opposite side of the four-seat configuration in which KIM was seated (the plane was configured with 2 seats, an aisle, four seats, an aisle, then two seats). Y.B. observed KIM touching J.J. with his hands and observed N.J. attempt to dissuade KIM from continuing his behavior.

15. Y.B. verbally engaged KIM, in Korean, asking him to leave J.J. alone. KIM immediately locked eyes on Y.B. and began yelling in Korean that he was "going to get" Y.B. KIM repeated this several times as he quickly stood up, and then put his foot on J.J.'s left shoulder in an attempt to lunge over the four seats between him and Y.B.

16. J.J. stated KIM stood on his left shoulder with his weight and causing J.J. pain to his shoulder area.

17. Y.B. stated she felt scared and intimidated by the words and body language of KIM. When KIM lunged at Y.B. she became so scared she moved toward the front of the plane. Y.B. noticed other "able-bodied" passengers getting up to assist.

18. On-duty flight attendant N.P. observed the aforementioned actions by KIM and immediately grabbed the empty liquor bottle on his tray table, as well as assist other flight attendants in returning KIM to his seat.

19. Passenger B.S., seated a few rows behind KIM, observed some of the commotion at the beginning of the first cabin service. B.S. was watching the Y.B.

interact with passengers a couple of rows up and observed KIM quickly stand up and utilize the shoulder of J.J. in an attempt to propel himself toward Y.B.

20. B.S., along with fellow passengers, R.O., J.P., and W.M., all stood up to assist the all-female crew. B.S. stood in the aisle way and observed KIM's unwillingness to calm down as flight attendant's attempted to engage him in conversation and calm him down. On-duty flight attendant L.K. warned KIM that if he did not calm down, he would be put in flex cuffs. B.S. heard KIM yell, "put me in flex cuffs!"

21. As the situation continued to escalate—to the point KIM was yelling at the top of his lungs in a mix of English and Korean—the decision was made to cuff him.

22. B.S. and R.O. assisted L.F. and N.P. to affix the cuffs to KIM's wrists. KIM was cuffed behind his back and escorted to the rear of the plane by B.S. and R.O. B.S., R.O, J.P., and W.M. took turns sitting with KIM, making sure the cuffs remained in a suitable position and escorting KIM to the restroom as needed.

23. Pilot M.T. stated he was awoken and asked to assess the status of KIM. M.T. walked to the rear of the plane where KIM was being detained and observed a very erratic and belligerent man that was fighting against the seatbelt and the flex cuffs and yelling at the top of his lungs for anyone to let him loose. M.T. observed the

entire flight crew rattled and commenting they could not effectively due their job with KIM on the flight. The decision was made to return the flight to HNL.

24. Based on the foregoing, and on my training and experience, I believe there was probable cause to arrest KIM on February 27, 2019, for interference with flight crew members and attendants Hawaiian Airlines flight #459, in violation of 49 U.S.C. § 46504.

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

       FURTHER AFFIANT SAYETH NAUGHT.

DANIELLE DESANCTIS
SPECIAL AGENT, FBI

Subscribed and sworn to before me, this 28 day of February, 2019.

HON. RICHARD L. PUGLISI
United States Magistrate Judge

7